# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**TRICIA A. MIKE, o/b/o G.R.,**
**a minor child,**

                        **Plaintiff,**

**-vs-**                                                          **Case No.  6:10-cv-118-Orl-GJK**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                        **Defendant.**
_____

# ORDER

Tricia A. Mike ("Ms. Mike"), on behalf of G.R., a minor child (the "Claimant") appeals

to the District Court from a final decision of the Commissioner of Social Security (the

"Commissioner") denying Claimant's application for benefits. *See* Doc. No. 1.   Ms. Mike

maintains that Claimant is disabled due to schizophrenia, a learning disorder, borderline

intellectual functioning, and a mixed receptive-expressive language disorder.  R. 21, 24, 318.

Claimant argues that the final decision of the Commissioner should be reversed for further

proceedings because: 1) it is not supported by substantial evidence because the Administrative

Law Judge (the "ALJ") rejected the opinions of Claimant's treating physicians based upon the

opinion of a non-examining psychologist, Dr. Kronberger; (Doc. No. 21 at 22-23); 2) the ALJ's

finding that Claimant has a marked rather than a severe limitation in the area of acquiring and

using information was not supported by substantial evidence (Doc. No. 21 at 19); 3) the ALJ

impermissible substituted his own opinion of that of the medical professionals (Doc. No. 21 at

23); and 4) the ALJ should have considered whether Claimant was entitled to an award of benefits for a closed period (Doc. No. 21 at 24-25).  Doc. No. 21.  For the reasons set forth below, the Commissioner's decision is **REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) because the final decision is not supported by substantial evidence.**

## I.    BACKGROUND.

This case has a long history, including a previous remand from federal court. *See* Case No. 6:07-cv-499-Orl-DAB, Doc. No. 24 (M.D. Fla. Aug. 4, 2008) (reversing due to ALJ ignoring and mischaracterizing certain evidence related to poor academic performance and due to ALJ and Commissioner's characterization of Claimant's paranoid schizophrenia or hearing voices as having no affect on her ability to interact and relate others).  Because the dispositive issue in this case is whether the ALJ erred by rejecting the opinions of Claimant's treating physicians based on the opinion of a non-examining clinical psychologist, Dr. Carlos Kronberger, the Court will tailor the medical and administrative history to that issue.

Claimant was born on March 22, 1994, and was eleven years old at the time of the first hearing and fifteen years old at the time of the second hearing before the ALJ.  R. 65, 315, 572.  On June 2, 2002, Claimant filed an application for benefits.  R. 53-59.  On November 6, 2002, Claimant presented to Dr. Rosimeri Clements, a psychologist, for a consultative mental examination to determine the extent of Claimant's learning disorder.  R. 234-38.  Dr. Clements noted that Claimant "talks" with imaginary friends, and that she has a family history of schizophrenia, but the primary focus of the examination was Claimant's learning disorder.  R. 234-38.  Dr. Clements opined that Claimant has borderline intellectual functioning, mixed

receptive-expressive language disorder (provisionally), and nocturnal enuresis.  R. 238.  Dr.

Clements recommended that Claimant obtain mental health care treatment "to monitor her

'overactive' imagination."  R. 238.  Dr. Clements's November 6, 2002 examination is the only

consultative examination in this record.

From August 25, 2003 through April 12, 2005, Claimant received regular treatment for

auditory hallucinations at Act Corporation.  R. 252-54, 257-58, 261, 264-66, 284, 286, 288-89,

292-93, 295-97.  At Act Corporation, Claimant's primary treating physician was Dr. Manuel

Mota-Castilo.  *Id*.  On or about October 25, 2003, Claimant was diagnosed with Psychotic

Disorder not otherwise specified ("NOS").  R. 252-54, 266.  Claimant was placed on 5

milligrams of Abilify, which is used to treat schizophrenia.  R. 252-54.[1]  Claimant showed

improvement on Abilify until May of 2004, when treatment notes indicate she was still hearing

voices.  R. 258, 264, 295-296.  On May 7, 2004, a provider from ACT Corporation completed a

Mental Residual Functional Capacity Assessment opining that the Claimant has marked

limitations in the ability to sustain an ordinary routine without special supervision and in the

ability to interact appropriately with the public.  R. 298-99.  The report further states that

Claimant: "has been diagnosed with Psychotic Disorder.  She struggles with hallucinations and

delusions.  She hears voices especially when left alone and claims to have been physically

assaulted by inadament [sic] objects.  She has responded well to medication and treatment."  R.

---

[1] Aripiprazole, commonly referred to as Abilify, is an atypical antipsychotic medication used to treat schizophrenia
in adults and adolescents.  *Physicians' Desk Reference*, 65th Ed., pp. 3458-60 (2010).  In adolescents, dosages range
from 2 milligrams per day to 30 milligrams per day.  *Id*.

300.  On December 16, 2004, Claimant was given a Global Assessment of Functioning ("GAF")
score of 45.  R. 288-89.[2]

On January 25, 2005, Dr. Mota-Castilo changed Claimant's diagnosis from Psychotic
Disorder NOS to Paranoid Schizophrenia.  R. 286-87.  The treatment note states that Claimant is
continuing to hear voices, is uneasy about discussing them, and is continuing to urinate and
defecate in bed at night.  R. 286.  Claimant's GAF score was 45.  R. 287.  Dr. Mota-Castilo
increased Claimant's dosage of Abilify to 20 milligrams per day.  R. 287.  On April 12, 2005, the
last treatment record from Dr. Mota-Castilo in this record states that Claimant is being treated for
paranoid schizophrenia. R. 284-85. Ms. Mike reported that Claimant could still be observed
talking to herself and Claimant admitted to continuing to hear voices.  R. 284.  Claimant was
given a GAF score of between 45 and 50.  R. 285.  There are no other treatment records from
ACT in this record.

From March 21, 2007 through April 23, 2009, Claimant received regular mental health
treatment for auditory hallucinations and depression from Halifax Behavioral Services
("Halifax").  R. 473, 476-495, 521-58.   On March 21, 2007, Claimant was referred to Halifax
for treatment and evaluation of schizophrenia.  R. 490.  Claimant's primary treating physician at
Halifax appears to have been Dr. Casanova.  R. 490-95.  Dr. Casanova notes that Claimant is
hearing voices and talking to objects that are not there.  R. 490-95.  Dr. Casanova also notes that
Claimant has a family history of schizophrenia, but diagnoses Claimant with Psychotic Disorder

---

[2] A GAF score of 45 represents serious symptoms or a serious impairment in social, occupational, or school
functioning.  *See* DSM-III-R Axis V: Global Assessment of Functioning Scale.

NOS because Claimant is "too young" for schizophrenia.  R. 495.  Dr. Casanova maintained

Claimant on Abilify at 20 milligrams per days and added Lamictal at 25 milligrams per day.[3]

Throughout Claimant's treatment with Dr. Casanova, she maintained the diagnosis of

Psychotic Disorder NOS.  R. 473, 476-495, 521-31.  Claimant's GAF scores ranged from 45 to

65 during her treatment, including a score of 50 on February 3, 2009.  R. 473, 477, 479-82, 486-

489, 537-46.  Beginning in August of 2008, Claimant's Abilify was reduced from 20 milligrams

to 15 milligram and, thereafter, continually reduced to 5 milligrams per day.  R. 477-479.  On

February 2, 2009, treatment notes reflect that Claimant was still hearing voices and performing

poorly in school.  R. 537-44.  On February 2, 2009, Claimant was also diagnosed with

Depressive Disorder NOS, and began receiving treatment at Halifax Behavioral Clinic.  R. 544-

58.  On April 8, 2009, however, Dr. Casanova continued to opine that Claimant maintains the

diagnosis of Psychotic Disorder NOS. R. 531.

The administrative background through the date of the prior remand order is adequately

set forth in United State Magistrate Judge David A. Baker's order and is incorporated herein by

reference.  *See* Case No. 6:07-cv-499-Orl-DAB, Doc. No. 24 (M.D. Fla. Aug. 4, 2008).  On May

7, 2009, a hearing was held before ALJ John Thompson. R. 563-631. Claimant, who was

represented by counsel, Ms. Mike, and medical experts Drs. Alvin Goldstein and Carlos

Kronbereger were the only persons to testify at the hearing.  R. 563-631.  Drs. Goldstein and

Kronberger did not examine the Claimant, but were called by the ALJ to offer opinions after

conducting a records review.  R. 567, 593-94.

Dr. Goldstein is an expert in the field of pediatrics and offered testimony concerning

Claimant's physical impairments.  R. 566-71.   Dr. Goldstein testified that from a physical

---

[3] Lamictal is used to treat epilepsy and bipolar disorder. *Physicians' Desk Reference*, 65th Ed., pp. 1436-37 (2010).

standpoint there have been no medical conditions which have afflicted Claimant since 2003. R. 569.

Dr. Kronberger testified that Claimant does not meet any listing for a mental impairment. R. 595. Dr. Kronberger noted that although Claimant has a learning disability, she is doing well in school. R. 596 (citing a January 29, 2009 report from Claimant's school. R. 454-63).[4] Dr. Kronberger stated that in his opinion Dr. Mota-Castilo's diagnosis of paranoid schizophrenia is incorrect because other than having hallucinations, Claimant does not have any other features of the impairment. R. 595-96. Regarding the diagnosis of paranoid schizophrenia, Dr. Kronberger states:

> To me it seems that anybody who has . . . diagnosed her as schizophrenic has not really considered appropriately the age of this child when the reports were first made on the one hand and there is some other interesting aspects of this family. There is a history of learning disabilities that run through the family. There are some serious stressors that the Claimant - - might influence her having some transient social thoughts or patterns. For example, significantly - - well, the Claimant has been raised in a single – parent household but appears to - - her mother appears to have gone through a serious bout of depression in 1994 as to her first incident at age nine. So when she was first born, [Claimant], her mother was going through a period of depression and there is also a history of schizophrenia on the mother's side, on the mother's sister's side of the family. And additionally, there is a note by Dr. Clements out of the narrative that she - - that [Claimant] witnessed her 18-year-old sister attempting to stab a boyfriend during an altercation and then turning the knife on her older sister and brother. So there might be more - - some additional stressors going on in that family and this might be a way in which the Claimant has tried to protect herself psychologically by creating these imaginary perceptual thoughts.

---

[4] In his testimony, Dr. Kronberger noted that the report "suggests" that Claimant has "significant difficulties with reading." R. 596. The report states that the Claimant, who was then in the 8th grade, was reading at a third grade level. R. 456.

R. 599.   Thus, rather than suffering from schizophrenia or a psychotic disorder, Dr. Kronberger suggests that Claimant may have created these "imaginary perceptual thoughts" to protect herself. *Id*.

Dr. Kronberger states that Dr. Clements did not find Claimant suffered from any "sign of psychosis" or "any really serious psychological diagnosis." R. 600.   Moreover, Dr. Kronberger states that he is not convinced that Dr. Clements' diagnosis of borderline intellectual functioning is accurate. R. 600.  Dr. Kronberger concludes: "I suspect she has higher cognitive abilities." R. 600.

Dr. Kronberger testified that he disagrees with Dr. Casanova's diagnosis of Psychotic Disorder NOS because it is not consistent with other parts of the record, including that Claimant is doing well in school.  R. 603.    Dr. Kronberger testified that he is "not quite sure how to justify [Dr. Casanova's] diagnosis of [Psychotic Disorder], but [he] also [does not] find that there is really compelling evidence that the Claimant meets the criteria for any type of mood disorder, depressive order not otherwise specified." R. 604-05.  Thus, Dr. Kronberger does not agree with diagnoses of paranoid schizophrenia or depressive disorder NOS.  R. 603-605.    When asked which diagnosis fits the records, Dr. Kronberger testified:

> Well, the psychotic disorder not otherwise specified is the diagnosis that I could agree with and she seems to be responding well to decreasing dosages of medication.  But independent of that, even when she was first given a diagnosis, I don't believe that her social functioning or language functioning and her mental status was that – was really that abnormal.  It was mostly a report of what was going on at home that she was having these that led to her starting - - be started on medication.

R. 608.  Thus, in the end, Dr. Kronberger agreed with the diagnosis of psychotic disorder.

On July 13, 2009, the ALJ issued a decision finding that Claimant is not disabled. R. 358-375. The ALJ made the following significant findings:

1. The [C]laimant was born on March 22, 1994. Therefore, she was a school-age child on June 10, 2002, the date the application was filed and she is currently an adolescent;

2. The [C]laimant has not engaged in substantial gainful activity at any time relevant to this decision;

3. The [C]laimant has the following combination of severe impairments: a history of psychotic disorder (NOS), a learning disorder (NOS), borderline intellectual functioning, mild anemia and enuresis;

4. The [C]laimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments;

5. The [C]laimant does not have an impairment or combination of impairments that functionally equals the listings;

6. The [C]laimant has not been disabled, as defined in the Social Security Act, since June 10, 2002, the date the application was filed.

R. 361, 363, 375. At step-two, in determining the Claimant's severe impairments, ALJ states:

Dr. Kronberger testified that based on his review of the record evidence, the [C]laimant had the following diagnoses: psychosis (NOS), a learning disorder (NOS), and borderline intellectual functioning. He found no record basis for a diagnosis of mixed receptive-expressive language disorder, a depressive disorder, paranoid schizophrenia or an anxiety condition. The undersigned finds Dr. Kronberger's testimony to be persuasive and therefore finds such medical conditions do not constitute medically determinable impairments under the Commissioner's rules and regulations.

The undersigned further finds that the diagnosis of schizophrenia/paranoid schizophrenia is also not supported by the overall record evidence. As Dr. Kronberger testified, the [C]laimant does not have sufficient symptom to warrant a diagnosis of schizophrenia (paranoid or otherwise) [because] the

requirements of the current DSM-IV . . . have not been met due to the internal inconsistencies in the reports offered by the providers at the Act Corporation and the Halifax Behavioral Clinic. Dr. Kronberger also testified that the diagnosis of schizophrenia in children is very rare and symptoms of the disorder usually do not manifest themselves until the mid-teenage years or thereafter. Dr. Kronbergeer also questioned whether the [C]laimant's alleged hallucinations were rather a means of her responding to some substantial family stressors that she was experiencing around 2003. In addition, the [C]laimant testified she had not heard "voices" in quite a long time and her mother testified she had not received any information from school authorities or teachers that suggested the [C]laimant was presently (or ever had) any such psychotic symptoms. Nor is there any indication of the [C]laimant having problems interacting with others, either at school or at home which Dr. Kronberger noted is contraindicated for a person with schizophrenia. <u>Dr. Kronberger also noted that the [C]laimant's dosage of Abilify (an anti-depressant and not used to treat psychotic disorders)</u> had been reduced by 75% from November 2007 to the present time with no increase in any prior psychotic symptoms. Accordingly, the undersigned finds good cause to reject the diagnosis of schizophrenia/paranoid schizophrenia.

R. 362 (emphasis added). Thus, the ALJ rejected the opinion of Claimant's treating physicians at Act Corporation that Claimant suffers from paranoid schizophrenia based on the testimony of Dr. Kronberger, a non-examining physician. R. 362. The ALJ also appears to have adopted Dr. Kronberger's opinion that Claimant's "alleged hallucination" were created by her to cope with family stressors, and that Abilify is not an anti-psychotic medication, but merely an anti-depressant. R. 362.

When the ALJ addressed whether the Claimant has an impairment or combination of impairments that meets or medically equals a listing, the ALJ adopted the opinions of Dr. Kronberger. R. 363.[5] The ALJ states:

---

[5] The ALJ also adopted the opinions of Dr. Goldstein, a non-examining pediatrician, but because the Claimant has not alleged that she is disabled due to any physical impairment, the Court has not addressed the ALJ's reliance on Dr. Goldstein's testimony. R. 362-63.

> Dr. Kronberger . . . testified that based on his review of the record the [C]laimant did not have any mental impairment which met or medically equaled any listed impairment. . . . [Dr.] Kronberger found the [C]laimant had less than marked or no limitations in the 6 functional domains as did the reviewing State agency consultants.  The undersigned is persuaded by [Dr.] Kronberger's opinions that the [C]laimant did not have an impairment, singly or in combination, which met or medically equaled any listed impairment. . . .

R. 363.  Thus, the ALJ based his finding that Claimant did not have a impairment, singly or in combination, that met or functionally equaled a listing on the opinions of Dr. Kronberger and other non-examining state agency consultants.  R. 363.

In terms of the opinion evidence, the ALJ states:

> [T]he undersigned has considered the December 2004 functional assessment provided by a staff member at the ACT Corporation but finds such severe limitations to be neither supported nor bolstered by the overall record evidence.  As noted above, there is no evidence of the [C]laimant having any social or behavioral problems in school.  Her mother testified the [C]laimant did not have any such problems at home.  <u>Accordingly, the undersigned finds good cause exists to reject such severe findings and instead accords greater weight to Dr. Kronberger's hearing testimony</u>.  The undersigned notes that Dr. Kronberger is a clinical psychologist who had the benefit of reviewing the entire record evidence in its totality and provided cogent rationale and record support for his stated findings.  The undersigned finds Dr. Kronberger's stated findings to be consistent with the overall record evidence with the exception of his findings of limitation as to the domain of acquiring and using information, which . . . the undersigned finds to be "marked" as opposed to "less than marked."  <u>As such, the undersigned further finds good cause to accord little weight to any contrary findings, reports, or observations contained in the treatment records at either ACT Corporation or at Halifax Behavioral Clinic due to internal inconsistencies (i.e. findings of normal mental status examinations with diagnosis of schizophrenia).  While the undersigned acknowledges that a child (or anyone for that matter) who hears "voices" may well have a serious mental health problem, the overall record evidence in these proceedings coupled with Dr. Kronberger's expert testimony</u>

-10-

demonstrate that her mental impairments, although severe, have
not resulted in a "marked" or "extreme" limitation in any
functional domain other than [acquiring and using information].
Dr. Kronberger gave extensive hearing testimony with respect to
the [C]laimant's functioning as well as the treatment records. He
explained the basis for his functional ratings as well as record
support. The undersigned also notes that the [C]laimant's hearing
testimony shows she was fairly articulate and able to respond
clearly to the information sought during the recent hearing. In
addition, the undersigned finds her range of daily activities and
overall presentation clearly support a conclusion that she is not
psychotic and whatever difficulties she have had in the past have
been successfully addressed by the medications prescribed for her.
Reduced weight has also been accorded to the therapist notes
[showing Claimant has depressive disorder NOS] in light of the
hearing testimony offered by Dr. Kronberger as discussed above.

R. 368 (emphasis added). Thus, ALJ rejected the 2004 functional report and gave the greatest

weight to Dr. Kronberger's opinions, including rejecting all treatment records, reports, and

observations made by Claimant's treating physicians, both at Act Corporation and Halifax

Behavioral Clinic, which conflict with Dr. Kronberger's non-examining opinions. R 368. Based

on the forgoing, the ALJ concluded that Claimant was not disabled.

## II.   THE ISSUE.

The dispositive issue in this case is whether the ALJ erred by rejecting the opinions and

treatment records of Claimant's treating physicians based upon the opinions of Dr. Kronberger, a

non-examining physician. Claimant maintains that it was error for the ALJ to rely upon Dr.

Kronberger's opinion to reject the opinions and treatment records of Claimant's treating

physicians at Act Corporation and Halifax Behavioral Clinic. Doc. No. 21 at 13, 22. The

Commissioner states that in the Eleventh Circuit "an ALJ may rely on opinions of non-

examining sources when they do not conflict with those of examining sources." Doc. No. 26 at

15. The Commissioner maintains that Claimant "did not submit a medical opinion from a

treating or examining source regarding functional equivalence," and, therefore, "it was entirely proper for the ALJ to rely on [Dr. Kronberger's] expert medical opinion." Doc. No. 26 at 16.

## III.  LEGAL STANDARDS.

### A.  THE ALJ'S DISABILITY ANALYSIS.

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a).  The steps are followed in order.  If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

A child under the age of 18 is considered disabled if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).  At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR §§ 404.1520(b), 416.920(b). Substantial gainful activity ("SGA") is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves performing significant physical or mental activities. 20 CFR §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 CFR §§ 404.1572(b), 416.972(b).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§ 404.1574, 404.1575, 416.974, 416.975. If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c).   For an individual who has not attained age 18, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. 20 C.F.R. § 416.924(c).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process.   42 U.S.C. § 423(d)(2)(B).   The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).   Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534.   A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly.  *Vega v. Comm'r*, 265 F.3d 1214, 1219 (11th Cir. 2001).   If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the ALJ must be determined whether the claimant's impairment or combination of impairments meets or functionally equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.   If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement (20 CFR §§ 404.1509, 416.909), the claimant is disabled.  If it does not, the analysis proceeds to the next step.

In determining whether an impairment or combination of impairments functionally equals the listings, the ALJ must assess the claimant's functioning in terms of six domains:  1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for oneself; and 6) health and physical well-being. 20 CFR § 416.926a(b)(1).  A child's impairments functionally equal a listed impairment, and thus constitute a disability, if the child's limitations are "marked" in two of the six domains, or if the child's limitations are "extreme" in one of the six domains.  20 CFR 416.926a(d).

In assessing whether the claimant has "marked" or "extreme" limitations, the ALJ must consider the functional limitations from medically determinable impairments, including any impairments that are not severe. 20 C.F.R. § 416.926a(a). The ALJ must consider the interactive and cumulative effects of the claimant's impairment or multiple impairments in any affected domain. 20 C.F.R. § 416.926a(c).

20 C.F.R. § 416.926a(2) explains that a child has "marked limitation" in a domain when his or her impairment(s) "interferes seriously" with the ability to independently initiate, sustain or complete activities.  A child's day-to-day functioning may be seriously limited when the

-14-

impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities.  The regulations also explain that a "marked" limitation also means:

1. A limitation that is "more than moderate" but "less than extreme."

2. The equivalent of functioning that would be expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

3. A valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and his day-to-day functioning in domain-related activities is consistent with that score.

4. For the domain of health and physical well-being, frequent episodes of illnesses because of the impairment(s) or frequent exacerbations of the impairment(s) that results in significant, documented symptoms or signs that occur:  a) on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more; b) more often than 3 times in a year or once every 4 months, but not lasting for 2 weeks; or c) less often than an average of 3 times a year or once every 4 months but lasting longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity.

20 CFR § 416.926a(e)(2).

20 CFR § 416.926a(e)(3) explains that a child has an "extreme" limitation in a domain when his impairment(s) interferes "very seriously" with his ability to independently initiate, sustain, or complete activities.  A child's day-to-day functioning may be very seriously limited

when his impairment(s) limits only one activity or when the interactive and cumulative effects of his impairment(s) limit several activities.   The regulations also explain that an "extreme" limitation also means:

1. A limitation that is "more than marked."

2. The equivalent of functioning that would be expected on standardized testing with scores that are at least three standard deviations below the mean.

3. A valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to ensure ability or functioning in that domain, and his day-to-day functioning in domain-related activities is consistent with that score.

4. For the domain of health and physical well-being, episodes of illness or exacerbations that result in significant, documented symptoms or signs substantially in excess of the requirements for showing a "marked" limitation.

20 C.F.R. § 416.926a(e)(3).   Thus, for a disability finding, a child's impairments functionally equal a listing if the child's limitations are "marked" in two of the six domains, or if the child's limitations are "extreme" in one of the six domains.  *Id*.

### B.   THE STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.   *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

## C.    REMEDIES.

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the cause.  42 U.S.C. § 405(g)(Sentence Four).  To remand under sentence four, the District Court must either find that the Commissioner's decision applied the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence.  *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal

analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)); *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for District Court to find claimant disabled).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may also be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985). The District Court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson*, 99 F.3d at 1089-92, 1095, 1098. Where the District Court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[6]

---

[6] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric

IV.    **ANALYSIS.**

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability.   The Eleventh Circuit recently clarified the standard the Commissioner is required to utilize when considering medical opinion evidence.   In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. Jan. 24, 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor.  *Id.* (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).   The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'"  *Winschel*, 631 F.3d at 1178-79 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)).   *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly articulate reasons for giving less weight to the opinion of treating physician constitutes reversible error).

---

report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation).  After a sentence-four remand, the District Court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

Absent good cause, the opinions of treating physicians must be accorded substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.2004) (citations omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

*Johnson v. Barnhart*, 138 Fed.Appx. 266, 269 (11th Cir. 2005).[7]  "The opinion of a non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician." *Johnson,* 138 Fed.Appx. at 269.  Moreover, it is well established in the Eleventh Circuit that the opinions of a non-examining physician do not constitute substantial evidence on which to base a decision.  *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

In this case, Claimant produced nearly seven years of medical records from Acts Corporation and Halifax Behavioral Clinic where Claimant was treated primarily by Drs. Mota-Castilo and Casanova, respectively.  R. 284-310, 468-558.  During that time, Claimant's treating physicians diagnosed her with Psychotic Disorder NOS, Paranoid Schizophrenia, and Depressive Disorder NOS.  *Id*.  Claimant's treating physicians at ACT Corporation provided a function-by-function medical source opinion in 2004 indicating that Claimant suffers from marked limitations in two areas of functioning, and stating that Claimant suffers from hallucinations, delusions, and hears voices.  R. 280-91.   These treatment records and a function-by-function analysis constitute medical opinions.  *See Winschel,* 631 F.3d at 1178-79.  Thus, contrary to the

---

[7] In the Eleventh Circuit, unpublished decisions are not binding but are persuasive authority.

Commissioner's argument, Claimant did offer an opinion from a treating source. *See* Doc. No. 26 at 16. As set forth above, the ALJ rejected all of the treatment records, observations, and opinions from the entire seven year treatment history because they conflicted with Dr. Kronberger's opinion. R. 367-68. "The opinion of a non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician." *Johnson,* 138 Fed.Appx. at 269. Accordingly, based on the opinions of Dr. Kronberger, the ALJ lacked good cause to reject the opinions of Claimant's treating physicians.[8]

While the final decision must be reversed and remanded due to this error, one of the evidentiary problems with this case is that Claimant has not been examined by a consulting mental health physician since November 6, 2002, which is prior to Claimant's diagnoses of Psychotic Disorder NOS, Paranoid Schizophrenia, and Depressive Disorder. R. 234-38. Moreover, Dr. Clements' examination in 2002 was expressly limited to Claimant's learning disability and not directed at possible psychosis, depression, or schizophrenia. R. 234. Even so, Dr. Clements noted that Claimant "talks with imaginary friends and trees that tell her not to speak to others," and she recommended that Claimant obtain mental health care to monitor her "overactive imagination." R. 238.[9] However, Claimant has not been examined since 2002. Although, Claimant is now nearly an adult, on remand, the Commissioner may wish to have Claimant examined by physician who can provide a retrospective opinion based upon the results

---

[8] In Case No. 6:07-cv-499-DAB, Doc. No. 24 at 9-12, Magistrate Judge Baker reversed the final decision of the Commissioner, in part, because the ALJ failed to properly analyze and consider the evidence related to the domain of acquiring and using information. In this case, the ALJ thoroughly analyzed the evidence, including Claimant's school records and standardized testing, and ultimately concluded that Claimant has "marked" limitations in the domain of acquiring and using information. R. 5-13.

[9] In his decision, the ALJ states that Dr. Clements "did not find any sign of a psychotic illness or disturbance." R. 365 n. 4.

of the examination and not just a records review.[10]   On remand, the Commissioner should also consider whether Claimant is entitled to an award of benefits for a closed period.

## V.        CONCLUSION.

Based on the forgoing, it is **ORDERED** that final decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) because the decision is not supported by substantial evidence.[11]   The Clerk is directed to enter judgment in favor of the Claimant and close the case.

**DONE and ORDERED** in Orlando, Florida on September 19, 2011.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

David W. Glasser, Esq.
116 Orange Avenue
Daytona Beach, FL    32114

John F. Rudy, III
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida       33602

---

[10] The Court also notes that ALJ made a fairly significant factual error by stating that Abilify, the medication Claimant had been taking in varying dosages for over seven years, is not used to treat psychotic disorders.  R. 362. Abilify is an antipsychotic medication used primarily to treat schizophrenia.  *See Physicians' Desk Reference*, 65th Ed., pp. 3458-60 (2010).

[11] Claimant has not requested a remand for an award of benefits, but only a remand for further proceedings.  Doc. No. 21 at 25.  Additionally, because the Court finds that the final decision of the Commissioner is not supported by substantial evidence, it is unnecessary to address the other issues raised by the Claimant.

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia          30303-8920

The Honorable John D. Thompson, Jr.
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building, #400
8880 Freedom Crossing
Jacksonville, Florida   32256-1224